### ROY COLE v. STATE OF OHIO.

**Conviction Clearly Established by Accused's Evidence not Reversed for Inadvertent Error in Charge to Jury.**

When it is manifest from the record, by the defendant's own testimony, that he was clearly guilty of the offense charged in the indictment, a judgment of conviction will not be reversed for error in the charge due to an unintentional mistake in the use of language by the trial judge, apparent to everybody, jury and all alike, it being certain that a new trial would result only in another conviction.

ERROR.

## WINCH, J.

Plaintiff in error was convicted at the September term, A. D. 1909, of the Licking county common pleas court, of pocket picking.

It is conceded by his counsel that he took a gold watch, a railroad ticket, divers letters and one half pint bottle of whiskey from the person of one James Adams.

His defense was that though he took the property. he was so drunk that he did not know what he was doing, and so could have no intention to steal.

The judge properly charged the jury that one of the essential elements of the crime of pocket picking is the taking of property from the person of another, without force and violence, and without putting him in fear, but with the intent to steal the same.

It is said, however, that the judge improperly charged the jury as to the defense of intoxication, and this is the main ground of error relied upon by counsel for plaintiff in error, though it is also claimed that the verdict of the jury is contrary to the weight of the evidence on the question of intoxication.

*Transferred from Licking (5th) Circuit.

Cole v. State.

As to the evidence:

It is clear that both Adams and Cole were drunk on the night the offense was committed. Adams was asleep on a bench in the waiting room of the Baltimore & O. depot at Newark. Cole had been drinking ever since eight o'clock in the evening and came into the waiting room sometime between 11 o'clock P. M. and midnight, according to the witnesses, Annie Gallagher and Adolph Anthes, and between midnight and one o'clock in the morning according to his own story. He walked up to the sleeping man, shook him and not awakening him, went through his pockets, abstracting the articles mentioned in the indictment.

Cole says that he remembers nothing after midnight and was dopy, but his own story contradicts him in this respect.

Let us consider a few things he said when upon the stand, as shown by the record.

Being asked if he remembered being in company with a colored man that night, he says: "I remember it quite well, quite distinctly. I met him in Jerry Baker's place directly across the street from our place, that evening, about eight o'clock. I had been drinking more or less ever since Labor Day. I had been drinking in a moderate way, but was still in a condition to transact business."

Then he stated, that there was a German band at Baker's place and a colored man seemed to have it in tow. "I stayed there until the band left. They played two or three short pieces. We went down along the canal, the north bank of the canal and to the Dave Pigg property. Jake Steinkemper was engaged in business there. The German band played several pieces there. I remember quite distinctly of buying a drink there. This man had been very friendly to me—the man who formerly ran the place. The next stop was at the Klondike. I don't know how long I was there. It was about eleven o'clock I am sure. We had drinks there. The next place was George Fessler's. We had drinks there. We didn't stay very long there, only until they closed up, the ordinance requiring them to close at 12 o'clock. We ran around some after that, and the next thing I remember was being arrested at 6 or 7 o'clock in the morning at Gus Kern's place."

When asked about two tickets to Zanesville he had, he says: "I bought them from the night ticket man, Mr. Kelly, bought them myself and paid for them." And when asked, "Do you remember going to the Baltimore & O. station with two men, one of them a colored man, he answers: "I remember this colored man being there, because I went with him, but as to the other people I did not pay particular attention to them." And on cross-examination, he says that it must have been between 12 and 1 o'clock that he was at the depot; that several young fellows were there.

"There was a young man who formerly worked at Kuster's named Michael Burke for one and another man named Bacon who formerly worked there, and Steve Ulrich, who was the bartender at Fessler's, he was not along; he closed up his place, he was not along; and this colored fellow that they called 'Doc.' I remember being at Fessler's until they closed, and that when they closed, Ulrich, the bartender at Fessler's, said he liked to have company and he talked with us, and he said he would have to close. I think I do remember the conversation with him. I remember in a general way he invited us very kindly to go out."

And on redirect examination he says:

"Well my memory is not so poor but what I can remember some of those circumstances. I remember that this train was two and one-half hours late, and it was about three o'clock."

We think it clear from this record that Cole was so drunk that he was reckless of the consequences of his act, but not so drunk that he did not know what he was doing, and upon the evidence we are satisfied beyond a reasonable doubt that Cole took the property of Adams with the intention of stealing it.

Now as to the charge: Complaint is made as to the following part of the charge (page 111, bill of exceptions):

"The defendant claims that he was intoxicated at the time, and, on that subject, I charge you: that while drunkenness is not an excuse from crime, yet, if the defendant was so drunk as to destroy his reasoning powers, and thus not know what he was doing, that is a fact that may be considered by you, together with all the other facts and circumstances in the case for the purpose of determining the intention of the defendant at the time.

"Did the defendant intend to steal and take from the person of James Adams the property described in the indictment?

Cole v. State.

"Intention is a condition of the mind, and is difficult of actual proof. It is a question of fact for you to determine, from all the evidence and circumstances in the case."

It is claimed by counsel for plaintiff in error that the trial judge should have said "that is a fact to be considered by you" instead of that is a fact that may be considered by you.

We think he might well claim more and urge that the charge should have been, "if the defendant was so drunk as to destroy his reasoning powers and thus not know what he was doing, then you must acquit him," for such is the law.

We do not think that the charge, as worded, is as bad as the one given in the case of *Cline* v. *State,* 43 Ohio St. 332 [1 N. E. 22] which the court characterizes as virtually saying that proof of intoxication could not be considered with respect to the felony charged in the second count of the indictment, for here the court says that it may be considered. The error lies in failing to indicate the weight to be given to the consideration of the drunkenness, should the jury find that the defendant was so drunk as to destroy his reasoning powers. It is probable that the charge, taken as a whole, is not misleading, and that the counsel for plaintiff in error should have requested the judge to charge more fully upon the subject of drunkenness, and to state specifically that if the defendant was so drunk that he did not know what he was doing, the jury should acquit him, under the ruling in the case of *Columbus R.* v. *Ritter,* 67 Ohio St. 53 [65 N. E. 613]. But we do not care to rest our conclusions in this case upon that proposition. It is so manifest from the record, by the defendant's own testimony, that he knew what he was doing when he took the property, that it would be idle to grant him a new trial for some manifest slip in the charge, and unintentional mistake in the use of language by the trial judge, apparent to everybody, the jury and all alike, it being certain that a new trial would result only in another conviction.

It was held in the case of *McHugh* v. *State,* 42 Ohio St. 154, that:

"A judgment will not be reversed merely because the record shows error to which exception was taken.

Cuyahoga County Circuit.

"The error to be ground of reversal must be prejudical to the rights of the party complaining. And this is the rule in criminal as well as civil cases."

That was a capital case and there are other authorities in Ohio to the same effect.

Applying that suggestion to the case at bar the judgment is affirmed.

**Marvin** and **Henry, JJ.**, concur.